of Manuel Dario Villachez Payano v. Mukasey. And we will first hear from, is it Ina Litkin? Ina, Your Honor. Ina, I'm sorry. Please proceed. May it please the Court. This is a case denied by the Board of Appeals, who affirmed the decision of the immigration judge with that opinion. So the Court must look at the I.J.'s opinion as the final agency determination. Here the I.J. made numerous errors in his fact-finding. First, he, in a very cookie-cutter, boilerplate fashion, stated that the petitioner's demeanor may be problematic. But he failed to specifically point to anything in the record to show that the petitioner's demeanor was anything but credible. Secondly, the I.J. made a negative inference from the fact that the petitioner could recall the countries from which he sojourned, from Peru to the United States, but could not remember exactly the dates he was threatened in 1990 or 1991, despite his other very consistent testimony with dates about the instance of harm he had in Peru. This kind of negative inference has been disallowed by the Court. If the I.J. was to draw a negative inference, he had to articulate what exactly about the petitioner's ability to recall the countries he traveled through made the rest of his testimony incredible. He failed to do that. But, counsel, one of the aspects of this case that was most troubling to me is the role, if any, that he played in Sendero Luminosa. Under our FARA case, as you're aware, discrepancy regarding membership in a persecuted group or, in this case, a terrorist group, goes to the essence of the asylum claim. What is there in the record that shows that the I.J. just missed it on this? Your client's position with respect to whether the young student was killed by the police or killed by Sendero Luminosa was very much inconsistent. He was there with them. He said he was coerced. But would you not agree that that really goes to the essence of his claim, his asylum claim? I agree that the petitioner did make a mistake in his declaration by stating that it was the police who killed Mr. Orozco, the student. And then later in Redirect, he admitted that that was an error that he failed to correct, and he was correcting it now, that, no, it was the Shining Path guerrillas who he thinks, though he could not be sure, were the reason for the death. But he does admit, does he not, that he was at the demonstration at the same thing that Sendero Luminosa was protesting, right? Right. But he characterized it in a way that showed that he was not a willing participant of terrorism. I understand. I understand he's now saying that he was coerced into doing this. I understand that perspective. I'm simply asking you as his counsel, why is the IJ wrong under the FARA case to take into consideration these clear inconsistencies in his testimony regarding the death of the student and his role in Sendero Luminosa? Because I think that he explained consistently his role, and that was not of a willing participant. If IJ really thought that he was a willing participant, then he would have applied the terrorist bar against this petitioner. But he didn't do that. So that shows that he did not truly feel that this petitioner was a willing participant. The petitioner's testimony clearly showed on the first incident of the demonstration that the terrorists came to the protest against peasant deaths. And the way he described it was that they were encouraged to do so in a peaceful way. As a student, the petitioner thought and he agreed to do so. Just one second. Clerk, could you find a way to close this off up here? It's pretty bright. I don't know whether we have any facility for doing so. It looks like there may be something over there. I apologize. We'll give you the extra time. Talk about a Sendero Luminosa. This is really something. The other way. Other way. There we go. Thank you. We'll give you an extra 20 seconds there. Please proceed. The point to be made here is that even if the petitioner did willingly participate in the protest against peasants, he stated that he did so because he thought it would be nonviolent. But the moment that he saw that actually the terrorists did not have such peaceful intentions, but had arms, he realized he did not want to participate in that. And he said that he threw rocks just to show that he was participating, but he never aimed at anyone. And he realized at that point. Wait a minute. He said he got there, found their arms. He didn't want to participate, but he threw rocks? Well, he said that he felt under duress, that if he didn't show even in a false way that he was participating, he himself could have been targeted like his fellow student, Javier Orozco. Can you perceive why the IJ may have had some difficulty making that logical leap? Well, Your Honors, I feel that because the petitioner testified consistently and explained on cross-exam as well when questioned on this point that he was forced against his will. I think it is conceivable given the fact that a fellow student of his was killed for perhaps failing to show that veneer. All right. Where is that in the record? He states... I don't remember seeing anything in the record about any allegation that the fellow student was killed because he didn't participate with Shining Path. Yes, Your Honor. If you could give me one moment, I will show you that. Okay. At the record in 160, he says that he didn't organize that protest on behalf of Orozco's death, but was pressured to attend. And one moment. It's hard to find things on your notes. It's between pages 153 and 160 where he says that Shining Path terrorist didn't like Orozco because he was a passive supporter and didn't go to the meetings. Okay. So you're inferring that they killed him because he wasn't supportive enough? Nobody said that, though, right? Well, if the IJ didn't believe him, why didn't he or opposing counsel question him further and give the petitioner an opportunity to explain and more fully develop those facts around Orozco's support? I think I'll reserve the rest of my time. Okay. Very good. Thank you very much. We'll hear from Mr. Gentry, please. Good morning. May it please the Court. The immigration judge's adverse credibility findings were, in fact, supported by specific cogent reasons, and petitioner has not shown a compelling reason to disregard or to find otherwise. Therefore, the Court should uphold that adverse credibility determination. What we have here is an evolving story. We start with the asylum petition, which was kind of bare bones, which this Court has found is all right. But what is interesting is there was nothing in the asylum petition about the death of his cousin, Samuel Vilches, which according to his declaration and the subsequent testimony is what, which was four years later, by the way, which is what caused him to actually leave Peru, if he is to be believed. In his declaration, he specifically stated that he cooperated with Shining Path, that he organized the May 31, 1988, student protest against the death of a peasant, and then after Orozco was shot three days later or four days later, the June 2 protest about that. When he got into court and he realized that that was problematic because that indicated that he was cooperating with Shining Path, and as the immigration judge found, why would Shining Path persecute you if you were cooperating with them and if they perceived that you were, in fact, a member and supportive of them? That's when his testimony began to change. For instance, in the declaration, there is, he says that he organized the May 31 and the June 2 riots, and that on the May 31 riot, he threw rocks. When we get to his testimony, that's evolved to we were armed with Molotov cocktails. That's a far cry from being armed with rocks. He never goes back and says, I threw the Molotov cocktails, but we see the evolution that he's trying to show, how dangerous this group is and that he wasn't in cooperation. In the declaration, he states, I rallied the students in conjunction with Shining Path because I was a student leader. As he runs into problems in his direct examination and his cross-examination, it then changes to I did it under duress, I was coerced. He talks in the declaration, he's categorical, that the police shot Orozco. As he gets going into his testimony, he goes back and forth between the police shot Orozco, no, it was the Shining Path that shot Orozco, I was standing next to Orozco, I don't know who shot Orozco, but I believe it was the Shining Path, and my opponent is correct. He did say because Orozco was a passive supporter of the Shining Path organization, they were upset with him. First he says, though, they hated Orozco, then he changes it to, well, maybe they didn't like Orozco. All this is in response to the questions, well, wait a minute, you claimed that you organized the June 2nd, 1988 demonstration against the police because they shot Orozco. Now you're telling us you didn't believe the police shot Orozco, you believed Shining Path shot Orozco. Why then would you organize this protest against the police if, in fact, you believed it was Shining Path? Then the testimony shifts again, well, I don't know, I can't be sure who shot it, I was coerced. Now on top of all those problems, there's one other, which is not specifically mentioned by the immigration judge, but finds its way into the petition, into the government's brief. If you read the declaration, I'm sorry, the asylum application, Vilces says, I was, before I was in the university, I was in the army. And we fought pitched battles against Shining Path, and I received terroristic threats at that time. He attributes part of his persecution to that army service. That never comes up again in the declaration, although he mentions he served in the army in his testimony, he never again in any way attributes anything that happened to him based on his army service. It has totally changed. The real issue becomes then, how does this fit in with the rest of his testimony? If Shining Path knew that he was in the army, they'd issue terroristic threats against him because he was opposed to them. Why now, all of a sudden, on December 25th or 24th, Christmas Eve, 1986, are they trying to recruit him to their side? Why not? Have they simply forgotten this? Very hard to understand and to reconcile. Isn't there a good amount of material in the country reports and elsewhere that they do try to get student leaders and either coerce them or enlist them or frighten them or kill them if they don't cooperate? I mean, is that inconsistent with what he testified to? It's not fully inconsistent other than two things. One is the judge pointed out, apparently he became student vice president in July of 88, the president of the student organization in October, and within two months, a very short period of time before he's had any time to exercise his authority, Shining Path has targeted him. Which is a very short period, it's very implausible. But more importantly, Vilchaz testifies that at the very time he was in the university, he had three siblings in the university as well. They were all together studying. He claims that the threats against him were, we will kill you and we will kill your family if you don't cooperate. Yet, nothing, there was never a threat to any of his siblings, nothing ever happened to him. When asked about this, he said, well, they weren't aware of the siblings. That doesn't square with the country reports and everything else about the intelligence, as we say in the Army, the G2, that Shining Path would have had on him. If they're making these threats against his family, surely something would have happened if he stopped cooperating with them, which is what he said he did. And yet, nothing. The judge also pointed out that after he left, which was allegedly after the G2, he was not aware of the siblings. He said that after the death of his cousin, his family, or his parents and his five or six siblings, have continued to live in Lima, Peru, totally unmolested by the Shining Path. Very inconsistent with his story that they're out to get me, they're threatening my family if I don't cooperate. The judge, Your Honor? I'm just going to ask you, under the current situation, which is part of what we would be dealing with here, does the government claim that the Shining Path no longer exists, or does it claim that Shining Path exists in some form at this point? The latter, Your Honor. The latter. We are not saying it no longer exists. What we are saying is not that Vilches is a terrorist. That was not the immigration judge's finding, whatever he was focusing on. But that Vilches' testimony was so inherently improbable and inconsistent that it wasn't worthy of belief. And because he did not make a credible claim, and because he did not support it with evidence of corroboration of these threats, he had some evidence that he'd resigned as student president once he'd reported a robbery. But none of the threatening letters or anything else that he says he received or his family received were ever introduced into evidence. When the judge considered all that, along with the fact that his family continues to reside in Lima without any problem, and that his story was just inherently improbable and inconsistent, the judge found that he was not credible and therefore refused to grant him asylum. Again, that finding is supported by the evidence of record, and Petitioner has not shown that a reasonable fact finder would be compelled to find that the immigration judge erred in this respect. Accordingly, this Court should affirm the immigration judge's decision. So I'll direct to you your remaining questions. That will conclude my argument. Roberts. Thank you, Mr. Jentzer. Ms. Lipkin, if you'd like to finish your presentation. Your Honors, I'd like to address some of the points opposing counsel made. First of all, the IJ engaged in speculation to assume that the petitioner who had been president of the student union for two to three months before he was first attacked, and to find that there would be no motive of the guerrillas to attack him at that point is unsubstantiated. Again, he's engaging in speculation to think that the petitioner who was vice president for some time of the union and then was made president would not have participated and taken any action on behalf of the student union at that point. He may very well have, but again, he was not questioned further about that. To speculate would be unfair and not supported. What is your position with respect to his initial try to come to the United States through some of the Central American countries and then being turned back? Well, I don't think that has any bearing on the heart of this case. Well, it has to do with his failure to disclose it when questioned. Do you disagree with that? I do, Your Honors, because the court has held, there's many cases where a applicant's flight from the country of persecution really should not have any bearing on the heart. I'm not focusing on that. I'm talking about the credibility. Is it your position that he was never asked a direct question whether he'd ever tried to come to the United States previously? Is that your position? Well, if you look at the first application, I don't recall now whether he made it himself or had the help of a non-attorney, but it was a very bare-bones application, so I don't think his omission there should be held against him. When he submitted a second declaration in 2003 with the help of counsel, I believe he did discuss some portions of that. But again, not being an attorney himself, I don't think it should be discounted against him. I don't think that this failing to tell the court didn't enhance his claim, so I don't think. I just want to put one thing about the remaining family members. Sorry about that. I get 20 seconds, right? The remaining family members, especially the siblings who were students, they were not members of a student group, and therefore they were not similarly situated as the petitioner, and their continued presence unharmed in Peru should not be a factor to count against him. Thank you very much, both of you, for your presentations. The case of Pagliano v. Mukasey is submitted. Also, the case of Wilkes v. Electronic Data Systems Corporation has been submitted on the briefs and is now submitted for the record. We will now hear the case of Feng v. Mukasey. And when it's Arwin Swink, is that correct? Whenever you're ready, you can come to the podium and begin. And let me know if you want to reserve any time.
judges: Canby, Thompson, Smith